[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, Robert Kraft, brought this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by writ and complaint returnable March 1, 1994. He also sought an assignment of the wife's title and interest in a condominium dwelling unit and other relief, as on file.
The defendant wife, Joyce Kraft, filed an answer denying that the marriage was irretrievably broken down. In her cross complaint, she makes no allegation that the marriage has broken down; however, she seeks alimony and other relief, as on file. The parties were represented by counsel throughout the proceedings. At the trial, the parties and other witnesses testified; and, financial affidavits and written proposed orders were submitted. A number of documentary materials were introduced into evidence.
From the evidence, I find the following facts.
The couple was married September 20, 1990, at East Lyme, Connecticut. The wife's birth name was Joyce DiCenzo. There are no children issue of the marriage, and none have been born to the wife since the date of the marriage. One of the parties has resided continuously in this state for at least one year before the filing of the complaint. All statutory stays have expired. The court has jurisdiction.
This is the wife's third marriage; her first two ended in divorce. This is the husband's second marriage; his prior marriage of 27 years ended when his first wife died. Each have adult children of their prior relationships. CT Page 1929
The wife is 49 years of age, a high school graduate and a graduate of the Connecticut School of Broadcasting. She wrote and sold some radio commercials in the past and has worked as a waitress. She voluntarily left a hotel desk receptionist job recently and claims to be seeking employment as a retail store sales clerk or restaurant hostess. No evidence was introduced of her past earnings. She is now unemployed and claims to have suffered from an eating disorder brought on by these proceedings.
The husband is 54 years old, a high school graduate with an associate's degree who has worked as an electrician and electrical test engineer throughout his career. He now earns $908[1] per week gross for a 40 hour week, $677 per week net. He has enjoyed significant overtime income, and the benefit of an expense account. He is a union member and has health and life insurance benefits. In addition, he has a non-contributory retirement annuity (annuity fund shown on Defendant's Exhibit B) and a pension benefit which would provide him with $551 per month at retirement age of 65.
He suffers from diabetes, a bad back and an intestinal condition for which he takes medication.
This marriage of less than four and one-half years was in trouble from its inception. Shortly after the marriage, the wife failed to attend a wedding of one of the husband's daughters, although invited. There was a failure of communication. The wife had a large spending habit, and did not account to the husband for her expenditures when asked. She claims she `threw out' cancelled checks, credit card and charge account statements after checking them.
She had a poor relationship with several of his children, and they with her. The husband also was estranged from some of the children for a time. This was a substantial factor in the disintegration of the marriage.
She suspected him of infidelity, which resulted from his coworker's foolish prank. He suspected her of infidelity and of contacts with one of her former husbands. Each denied infidelity; neither trusted the other. This marriage appeared to be a mistake from the outset.
The parties separated in early 1994, when the husband CT Page 1930 left the house. He returned in the fall and the wife left the home shortly after. She now resides in New Hampshire. The wife denies that the marriage is irretrievably broken down and protests her love for the husband. She sought and still seeks conciliation; her testimony on this point is not credible. The parties attended some counseling.
On the state of this evidence, I find that the marriage has irretrievably broken down; however, it would be futile to attempt to precisely apportion fault between the parties for its destruction in the light of their credibility. They must each bear responsibility.
The wife brought little in monetary assets to the marriage; less than $5,000 in cash and a car. She earned little during the marriage and had primary responsibility for the home. She cooked, cleaned, laundered, shopped and cared for the husband. She prepared a special diet from him, in light of his diabetes problem.
The husband's income paid all of the bills. The wife handled the checking account and credit card statements; she disposed of the cancelled checks and credit card receipts, or did not produce them, and her expenditures were not reconstructed at trial. I draw the inference from the totality of the evidence, however, that her expenditures exceeded the husband's income.
The parties' major assets include a jointly-owned condominium unit, 97 West Main Street, Niantic, Connecticut, worth $110,000, less a mortgage balance of $73,000, leaving equity of $37,000. Apart from the wife's contribution of $1,500 to the down payment, the remainder of the funds needed to purchase it at a cost of $145,000, and the carrying charges and mortgage payments since it was purchased were provided by the husband.
The husband's retirement annuity is now worth $74,083, and its value a few months before the marriage was approximately $39,200. The husband also owns a boat worth $8,000, which was acquired for $17,500. The funds came from the net proceeds from the sale of his prior home. The wife's car, a 1989 Cadillac, is worth $7,500 with a loan balance of $300; it also was obtained, in large part, from the husband's funds. The car the wife owned at the time of the marriage, worth $5,000, was used for a down CT Page 1931 payment to purchase a Hyundai, which by a series of trade-ins and sales culminated in the present vehicle.
They also have a significant amount of furniture, furnishings and other tangible personal property, including fur coats and jewelry, which the couple has valued between $10,000 and $18,000. The wife purchased a large number of gold jewelry items from a television shopping channel over a few months. See Plaintiff's Exhibit 3.
Against these assets, they report liabilities totalling $9,550 for husband, which includes $2,900 borrowed from his daughter, and $13,892 for wife, of which $7,692 is on account of wife's attorney's fees. The remainder represents credit card charge account balances listed by both spouses.
As can be seen, the husband's monetary contributions to the acquisition, preservation and appreciation in the value of the marital assets far exceeded those of the wife. The wife's nonmonetary contributions to the marriage exceeded that of the husband.
The husband's earnings and earning capacity are superior to that of the wife, and hence, he has a greater opportunity than she has to acquire capital assets and income in the future. They both have employability; the wife has an earning capacity and is able to work but has not diligently exploited it.
I have considered all of the criteria in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the light of the evidence and findings in the establishment of the financial awards set forth below. I have also considered the taxable consequences and implications of said awards.
Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown. The following orders shall also enter.
(1) The husband shall take, have and own, all right, title and interest in the following real and personal property, which is hereby assigned to him: the condominium dwelling unit known as 97 west Main Street, No. 39, Niantic, Connecticut, subject to the mortgage, taxes and other charges associated therewith, which he shall pay and save the wife harmless CT Page 1932 therefrom; the 1976 24' Blackfin boat; his life insurance policy subject to the provisions in paragraph (5) below; his pension benefit; his annuity fund (except as set forth below in paragraph (2)); and all of the personal property in the residence and in his possession (except as specifically set forth in paragraph (2) below).
(2) The wife shall own, take and have the following personal property, all of which is hereby assigned to her: the 1989 Cadillac motor vehicle; the tangible personal property now in her possession, including her furs and gold jewelry; the wicker furniture; one bedroom set; a console table; an RCA console, living room end tables; a blue lamp; a dining room set (table and four chairs); a china and tea cart; `china crystal'[2]; two vacuum cleaners; prints (all those in her bedroom, living and dining rooms and one in the hall); one half of the pots and pans; the Fenton glass; silk flower arrangements; the goose; Corning ware; Kitchen Aide mixer; and the collection of dolls, teddy bears and craft items; and, the sum of $11,500 from the husband's annuity fund by Qualified Domestic Relations Order, or other appropriate instrument. The court will retain jurisdiction over this matter until accomplished.
(3) The husband shall pay to the wife as periodic alimony, the sum of $75 per week until September 1, 1996. Said alimony shall not be modifiable as to amount or duration and shall terminate upon the death of either party, the wife's remarriage or pursuant to General Statutes § 46b-86(b).
(4) As additional periodic alimony, the husband shall, pay the sum of $160 per month towards the wife's health insurance premiums until September 1, 1996. She shall remain covered under the husband's employment related health coverage pursuant to applicable law. Said additional periodic alimony shall terminate upon the death of either party, the wife's remarriage, pursuant to General Statutes § 46b-86(b), or upon the availability of health insurance through her employment and shall be otherwise nonmodifiable.
(5) So long as husband is obligated to make payments pursuant to paragraphs (3) or (4) above, he shall maintain the wife as irrevocable beneficiary of his union-related life insurance with face amount proceeds of $10,000; he shall execute and deliver to her an authorization so that she may, from time CT Page 1933 to time, determine the status of said policy.
(6) The husband shall pay the obligations shown on Schedule 3 of his financial affidavit, and pay off the car loan in accordance with its terms, and hold the wife harmless; the wife shall pay her attorney's fees, and the hospital and Cherry Webb liabilities shown on her financial affidavit, and save the husband harmless.
(7) The husband shall pay toward the wife's attorney's fees the sum of $2,200 in equal monthly payments of $200 per month commencing April 1, 1995. I find that a denial of an award of attorney's fees in toto would impair or undermine the other financial orders.
(8) All documents and instruments of title necessary or incidental to the effectuation of the orders herein shall be completed and exchanged, and the transfer of personal property accomplished, within thirty (30) days hereof.
The transfer of title to the real estate shall be pursuant to General Statutes § 46b-81.
Teller, J.